IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 03-00387-01-CR-W-ODS |
| ) | |
| ARRON M. LEWIS, ) | |
| ) | |
| Defendant. ) | |

<u>ORDER</u>

On August 17, 2007, the Court revoked Defendant's supervised release and sentenced him to eighteen months of imprisonment to be followed by eighteen months of supervised release. The issues involved in this proceeding are novel, and the parties and the Record will be aided by a written explanation of the Court's legal analysis.

<u>I. BACKGROUND</u>

On November 20, 2003, Defendant waived indictment and plead guilty to an Information charging him with interstate transportation of a stolen vehicle. The charge stemmed from an incident on October 31, 2003, in which Defendant stole a motorcycle. When he was arrested police officers found, among other items, a sketch of an explosive device, handcuffs, a law enforcement badge, and a demand note. The contents of the note indicate it was intended for use in a bank robbery. By the time of Defendant's arrest, the police had received a report from Defendant's roommate indicating Defendant had an explosive device. Later, Defendant admitted to officers that he had been designing an explosive device for use in a bank robbery.

The count of conviction is a C felony. The Total Offense Level was 4 and Defendant's criminal history category was III, resulting in a sentencing range of zero to six months. On March 11, 2004, Defendant was sentenced to time served with three years of supervised release. The conviction and sentence were not appealed.

On April 28, 2004, Defendant's supervised release was revoked because he had stolen a motorcycle in Kansas City and driven it to Irvine, Texas. These actions violated several conditions of his supervised release, including the conditions (1) prohibiting him from leaving the Western District of Missouri without permission of the Court or his Probation Officer and (2) prohibiting him from violating the law.

Discussion of the sentencing options resulted in a general agreement that the maximum amount of imprisonment permitted was two years, but the Court could then also impose an additional one year of supervised release. Stated another way, the Court could impose any combination of imprisonment and supervised release totaling up to three years, but the imprisonment component could not exceed two years. The difference in opinion involved the Court's options in the event Defendant later violated the terms of the subsequent supervised release. The Probation Officer opined that if the Court imposed the maximum possible term of imprisonment – two years – then "the year of supervision would, basically, be unenforceable." Rev. Tr. at 37.[1] Defendant's counsel expressed a different understanding:

> The two year [statutory] maximum is the amount you can impose at one shot. If the Court was to impose an additional one year of supervision after release from two years of custody, the Court will still have that one year to work with. And any violations in there, . . . whatever, they could still have that additional year, that two-year cap is only on the one shot.

Rev. Tr. at 37-38. Defendant was sentenced to two years imprisonment to be followed by one year of supervised release. One of the conditions of supervised release required Defendant to spend the first four months of that term in a halfway house. In issuing this sentence, the Court did not endeavor to decide what penalties, if any, could be imposed if Defendant were to violate the terms of the supervised release.

The revocation and sentence were not appealed. However, Defendant applied for postconviction relief pursuant to 28 U.S.C. § 2255. His request was denied, and the

---

[1]"Rev. Tr. at ___" is a reference to the transcript of the April 28, 2004, revocation hearing.

denial of relief was not appealed. Lewis v. United States, No. 05-0381-CV-W-ODS (W.D. Mo. Aug. 17, 2005).

On November 20, 2006, Defendant's supervision was transferred to the Western District of Louisiana, and he was designated to a halfway house in Monroe, Louisiana. On January 19, 2007, he was discharged from the halfway house because of noncompliant and uncooperative behavior. The Probation Department was not aware of his subsequent whereabouts until Defendant was arrested on February 4, 2007, by the Sheriff's Department of Ouachita Parish. This encounter with law enforcement began when an officer attempted to stop Defendant for failing to dim his headlights. Instead of stopping, Defendant led officers on a high-speed chase and rammed a police car several times to further his escape attempt. Defendant was eventually forced off the road by another police vehicle. He was charged with failing to dim his headlights, careless operation of a motor vehicle, lack of insurance, failure to register a vehicle, obstruction of highway commerce, and aggravated flight from a law enforcement officer. He was convicted of the latter charge and the other charges are no longer pending. The conviction and other conduct constitutes a violation of the terms of supervised release. The question now before the Court is the question it did not address or resolve in April 2004: what consequences, if any, does Defendant face for violating the second term of supervised release?

The answer to this question requires an analysis of the PROTECT Act of 2003. The effective date of the PROTECT Act was April 30, 2003, and its provisions apply to crimes committed after that date. As noted earlier, Defendant's original offense occurred in October 2003.

The PROTECT Act's amendments to 18 U.S.C. § 3583 are at issue because they dictate what a court can and cannot do upon finding a defendant has violated the terms of his supervised release. Generally speaking, subsection (e)(3) dictates the amount of imprisonment that can be imposed following revocation, and subsection (h) dictates the amount of supervised release that can be imposed following revocation. The PROTECT Act amended both subsections, but understanding the meaning and

3

effect of the amendments requires an understanding of the meaning and effect of the pre-amendment provisions.

Subsection (e)(3) permitted courts to "require the defendant to serve in prison all or part of the term of supervised release . . . without credit for time previously served on postrelease supervision . . . except that a defendant whose term is revoked under this paragraph may not be required to serve more than" specified limits. As noted, Defendant's underlying offense is a Class C felony, so the maximum term that could be imposed upon revocation was two years. Based largely on concessions from the Government, every court to consider the issue agreed this maximum term applied to the aggregate of all imprisonments imposed following revocations. United States v. Tapia-Escalera, 356 F.3d 181, 187 & n.7 (1st Cir. 2004) (citing cases and recounting events); see also United States v. Williams, 425 F.3d 987, 989 (11th Cir. 2005). As applied in this case, the pre-PROTECT Act version would not allow defendant to be sentenced to an additional period of imprisonment for his latest violation because he has already served two years for violating supervised release.

Subsection (h) formerly permitted a court to add a new term of supervised release, but only if the term of imprisonment imposed upon revocation was "less than the maximum term of imprisonment authorized under subsection (e)(3)." Defendant's original crime was a Class C felony, and the maximum term of imprisonment for violating supervised release imposed for a Class C felony (as described in subsection (e)(3) and as explained above) is two years. Defendant was sentenced to two years of imprisonment in April 2004 for the first violation of supervised release, so the prior version of the statute would not have permitted the Court to add a term of supervised release.

To properly analyze the Court's present options, the Court must first consider the legality of the new term of supervised release imposed in April 2004. The PROTECT ACT amended subsection (h) to remove the language quoted above. As amended, subsection (h) declares:

> When a term of supervised release is revoked and the defendant is
> required to serve a term of imprisonment, the court may include a

4

requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release *shall not exceed the term of supervised release authorized by statute* for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

(emphasis supplied). The critical change removes the comparison between the new term of supervised release and the term of imprisonment that could be imposed upon revocation; instead, the new term of supervised release is compared to the supervised release that could have been imposed for the original crime. In this case, the term of supervised release authorized by Defendant's original offense was three years. 18 U.S.C. § 3583(b)(2). Thus, the length of supervised release the Court could have imposed upon his violation in April 2004 was three years, less the two years of imprisonment imposed for that violation – for a total of one year. The Court's April 2004 sentence of two years of imprisonment and one year of supervised release was proper under the amended statute.

The next critical issue involves the issue the Court did not attempt to resolve during the April 2004 hearing: what consequences could follow from any subsequent violations of supervised release? The PROTECT Act amended subsection (e)(3) and now permits a court to "require the defendant to serve in prison all or part of the term of supervised release . . . without credit for time previously served on postrelease supervision . . . except that a defendant whose term is revoked under this paragraph may not be required to serve *on any such revocation* more than" the time specified based on the grade of the original felony. In other words, subsection (e)(3) now dictates that the maximum term of imprisonment that can be imposed for "any such revocation" is the amount specified in the subsection, without reference to imprisonment imposed for other revocations. Congress effectively overruled those decisions interpreting subsection (e)(3) as describing the maximum amount of imprisonment available for all revocations in the aggregate.[2] Therefore, the prior sentence for Defendant's first

---

[2] No court has reached this holding; in fact, the Court's research suggests no court has even reached this issue. A few courts have predicted this outcome. E.g.,

revocation has no effect on the sentencing options for Defendant's latest revocation. The Court has the same options it had in April 2004: it can impose a sentence of imprisonment of up to two years, and can impose a term of supervised release so long as the term of imprisonment and the term of supervised release do not add up to more than three years.

Concern has been expressed that this conclusion means a person may never "leave" the criminal justice system. This is incorrect, as there are two exits. The first, and most obvious, is for a defendant to successfully complete his term of supervised release. The second is for the court to decide that a term of supervised release is not appropriate. There is no requirement that a term of supervised release be imposed following a revocation, so in an appropriate case a court need not impose such a term.

Defendant also argues subsection (h) does not permit the Court to impose an additional term of supervised release following the instant revocation. He reaches this conclusion based on that provision's directive that "[t]he length of such a term of supervised release shall not exceed the term of supervised release authorized by statute . . . *less any term of imprisonment that was imposed upon revocation of supervised release.*" (emphasis supplied). Defendant contends the "term of imprisonment" described in the italicized clause refers to the aggregate of all terms of imprisonment imposed for supervised release. He has already served two years of imprisonment, so if the Court imposes one year or more on this revocation (as it has), the aggregate period of imprisonment for all revocations will exceed the three years of

---

Williams, 425 F.3d at 989; Tapia-Escalera, 356 F.3d at 188. There have been some post-PROTECT Act cases generally acknowledging all revocation sentences are to be aggregated to determine if the maximum imprisonment has been imposed, but they all involve the pre-PROTECT Act version of statute. The lack of judicial opinions squarely addressing the issue is no surprise; there has not been a lot of time for a person to (1) commit a crime after the PROTECT Act's effective date of April 30, 2003, (2) complete their sentence and begin serving supervised release, (3) violate the terms of supervised release and be resentenced to a term of imprisonment followed by a new term of supervised release, (4) complete *that* term of imprisonment, and (5) violate the new term of supervised release.

6

supervised release permitted and no more supervised release can be imposed.[3] Defendant's argument garners some support from the observation that this portion of subsection (h) was not altered by the PROTECT Act and from prior Eighth Circuit holdings, particularly *United States v. Brings Plenty*, 188 F.3d 1051 (8th Cir. 1999). There, the Court of Appeals examined subsection (h) and concluded "the reference to 'any term of imprisonment' includes the prison term in the current revocation sentence together with all prison time served under any prior revocation sentence(s)." 188 F.3d at 1053. However, the Eighth Circuit's interpretation of subsection (h) was predicated on the then-existent understanding that subsection (e)(3) also contemplated aggregating time periods, id., and this underpinning for *Brings Plenty* has been legislatively changed.

Defendant's other primary argument contends he did not receive the notice required by Rule 11 of the Federal Rules of Criminal Procedure and principles of due process. Rule 11(b)(1)(H) requires a court accepting a change of plea to advise the defendant of "any maximum possible penalty, including imprisonment, fine and term of supervised release." Defendant was told he could receive a term of supervised release of up to three years. Rule 11 does not require a detailed analysis and explanation of the possible consequences for violating supervised release – nor could it. There is no way for a court presiding over a Rule 11 hearing to know whether, or in what manner, or how many times, a defendant will violate supervised release. This is not a case in which the amount of supervised release imposed was different than that announced at the Rule 11 hearing; while Defendant has received additional terms of imprisonment and supervised release it is because of his post-release conduct. The initial term of supervised release imposed was not greater than indicated at the Rule 11 hearing.

---

[3]This argument would not affect the April 2004 sentence because at that time the total amount of imprisonment – two years – was less than the permitted amount of supervised release – three years. It also would not affect the amount of imprisonment that can be imposed at this time because that is governed by subsection (e)(3) and not subsection (h). Therefore, at most this argument would demonstrate an additional term of supervised release cannot be imposed for Defendant's latest violation.

7

Defendant was told, both in the Plea Agreement's terms and in statements from the Court during the Rule 11 hearing, that violation of any supervised release terms could result in revocation and imprisonment for a period up to the full term of supervised release. This was a correct statement of law. Defendant correctly observes Defendant was not told he could be sentenced to additional terms of supervised release or that violations of those subsequent terms could also result in imprisonment, but the Court does not believe there was a legal requirement that he be told. The maximum punishment was described. The fact that there has been a subsequent violation of a subsequent term, resulting in yet another revocation and imposition of imprisonment and yet more supervised release, is a collateral consequence of the original sentence and is not an eventuality the law requires a defendant be cautioned about. United States v. Lambros, 544 F.2d 962, 966-67 (8th Cir. 1976); see also George v. Black, 732 F.2d 108, 110 (8th Cir. 1984).

Alternatively, the Court agrees with the Government's contention that any error was harmless. Defendant does not suggest, and the Court does not believe, Defendant's decision to plead guilty would have been affected by knowledge that violations of supervised release might result in not only imprisonment but also additional terms of supervised release, each of which carried their own risk of more imprisonment and more supervised release if Defendant violated the terms. Cf. United States v. Gillen, 449 F.3d 898, 903 (8th Cir. 2006).

For these reasons, the Court concludes (1) the term of imprisonment and supervised release imposed in April 2004 were lawful, (2) Defendant has violated the terms of his supervised release, (3) the Court is empowered to impose another term of imprisonment of up to two years, and (4) the Court is empowered to impose another term of supervised release, so long as the sum of the supervised release term and the imprisonment term does not exceed three years.
IT IS SO ORDERED.

DATE: August 22, 2007

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT